# CHARLESTON.

SOUTH PENN COAL COMPANY v. MALE et al.

Submitted June 13, 1908.     Decided May 11, 1909.

1. EVIDENCE—*Weight of Evidence.*
   The supreme importance of a transaction to one of the persons engaged therein will, as a general rule, make his testimony of greater weight, because his memory is more trustworthy, than that of an adverse party to whom the transaction is of less importance. (p. 695.)

2. APPEAL AND ERROR—*Review—Weight of Evidence.*
   Where a cause turns on the effect and weight of evidence, and credit of witnesses, and that evidence is such that reasonable men may differ as to its effect an appellate court will not reverse the decree below based thereon. (p. 697.)

Appeal from Circuit Court, Barbour County.

Bill by the South Penn Coal Company against Reese Male and others. Decree for defendants, and plaintiff appeals.

*Affirmed.*

J. HOP WOODS, for appellant.

W. B. KITTLE, for appellees.

Miller, President:

The South Penn Coal Company, a co-partnership, by bill filed in December, 1905, seek specific execution of a contract made January 23, 1902, by defendants Reese Male and wife, whereby in consideration of twenty five dollars, paid, they agreed to sell and convey to plaintiffs by deed of general warranty, free from all incumbrances and defects of title a tract of twenty five acres of coal land in Barbour county, at the rate of twenty four dollars per acre, one third cash on delivery of the deed, the balance in two equal annual payments with interest, the plaintiff to have until May 1, 1902, to accept said option and if notice of acceptance should not be given the optionors before that date the contract was to become null and void and of no further effect, but should such notice be given the contract was to become absolute and binding between the parties. Another object of the bill is to cancel and set aside as clouds on plaintiff's right and title to said land a subsequent contract of sale of said land, made November 9, 1905, and a deed therefor made November 20, 1905, by said Male and wife to defendant William T. George.

On final hearing on bill, answers and depositions, the circuit court by its final decree appealed from dismissed plaintiff's bill, thereby denying them the relief prayed for.

A number of questions are raised and argued here but the one on which all the others depend is whether plaintiffs as charged in their bill and positively denied in the answer of the defendant Male, gave to said Male and wife notice of their acceptance of said contract within the time prescribed thereby. If this question be determined adversely to plaintiffs it will be unnecessary to consider the other questions, for in that event they can not be said to fairly arise on the record.

To establish the fact of such notice before May 1, 1902, plaintiffs rely mainly on the testimony of W. W. Rainey, a member of said firm, who swears that on April 24, 1902, he served notice in writing on Male of the acceptance of said contract, the time, but place and circumstance not given, and he exhibits what he claims is a copy of the notice; the only return of service indorsed thereon, and identified by him as being in his handwriting are the words, "Copy served by W. W. Rainey." This alleged return bears no date, was not sworn to at the time, and

no other witness testifies to the fact of such service. The copy of the notice exhibited is addressed to "Reese and Martha Male," but there is no claim that any notice was served on Mrs. Male. J. N. Wilkinson, another member of the firm, swears that he prepared the notice and that a copy thereof was served by Rainey; but he was not present, and his testimony is entitled to little weight on the fact of service. Plaintiffs also rely to some extent on a copy of a letter exhibited with the bill, alleged to have been written to defendant Male, October 23, 1902, purporting to refer to a former letter, but not by reference to its date, calling Male's attention to certain specific liens on the land and other defects in his title and requesting him to remove the same. Under each item in this letter is a memorandum showing releases, or defects cured, except a deed of trust to W. B. Kittle of May 22, 1900, not released. The defendant Male in his answer does not deny having received such a letter; he simply says that all the liens and defects referred to had long since been released or corrected except the deed of trust to Kittle, which he says plaintiffs at the time of the contract of January 23, agreed to pay off and discharge for him out of the purchase money. So far as we can find no reference is made to this letter in the testimony of the witnesses. Plaintiffs claim that Male's procurement of such releases after the date of that letter goes to show that he regarded his contract of January 23, 1902, binding, and supports their claim of notice to him of its acceptance. It is a circumstance we think to be considered in connection with the other evidence on this important question; but it is by no means conclusive, and we do not think it entitled to very great weight, for admitting the letter to have been received by Male, it was long after plaintiff's rights would have expired without notice of acceptance given, and neither receipt of the letter, nor procurement by him of releases of liens or other defects in his title, could have in any way operated as a waiver of his rights under the contract, or estop him from denying any rights of plaintiffs not actually acquired by acceptance of the contract according to the provisions thereof. We may even assume that Male concluded, on receipt of that letter, to act on the suggestion to clear his title of defects, and that if plaintiffs should come forward with their money and notes he would let them have the land upon the terms of the contract,

but no one would say that in law or equity he would have been bound to do so. More than two years elapsed after the date of this letter before the plaintiffs undertook to have said contract recorded. They first presented it for record October 23, 1905, after the business of buying and selling coal lands had revived, and they had learned that defendant George was buying lands in that vicinity. They did not actually get the contract on record until December 1, 1905, after George had purchased the land at an advanced price and had actually had his contract and deed recorded.

Opposed to this testimony of the plaintiffs is the positive evidence of Male that notice of acceptance was never given him. Supporting him is the fact of long delay of plaintiffs in asserting their rights under the contract. Male swears positively that besides want of notice of acceptance no request or demand was ever made upon him for the abstract of title called for in the contract. Plaintiffs claim that by subsequent agreement with Male they agreed to abstract the title; but when was such an agreement made? They fail to prove it. And this suggests another very suspicious fact in connection with the alleged notice of acceptance. There is appended to the alleged copy of the notice exhibited with the bill, a form of receipt, as follows: "Received of the South Penn Coal Company the sum of one dollar in addition to the sum of twenty-five dollars heretofore paid, as per receipt, on the purchase price of the said coal described in the above option, and we agree to execute proper deed for the same as soon as said company has the same properly surveyed, abstract of title made and all liens are removed, and deed prepared for proper signature; for which work we agree to allow the sum of ——— dollars, to be credited on said purchase money. This the 24th day of April, 1902." But this receipt was never signed by the optionors or either of them. Why not? True it is dated April 24, 1902, within the time for acceptance; but what the necessity for such receipt? Male was illiterate; he could neither read nor write. A most significant fact about this form of receipt is its recital of a new consideration of one dollar, and that it contains a new agreement to convey as soon as the plaintiffs should have the land properly surveyed, a deed prepared, abstract of title made and all liens should be removed, "for which work we agree to allow the sum of ———

dollars, to be credited on said purchase money." "We" meant Male and wife, and that the receipt was to be signed by both— making a new contract, at a time when the one now sought to be enforced was still operative. Rainey, though admitting that the memorandum of service on the notice is in his handwriting does not distinctly say that that memorandum was made by him at the time. May it not have been made subsequently, from his mistaken recollection of the fact of service? He had been engaged with his co-partners in the business of buying and selling coal lands and in serving notices no doubt. Is it not reasonable to suppose that the notice was prepared by Wilkinson as he testifies, but not actually served, and laid away, and that afterwards when the question became important, and the notice was found among the papers, the endorsement of service was made by Rainey from faulty recollection? The doubt and uncertainty might have been cleared by evidence of the place and circumstance of service, or an explanation given as to why full return was not made and verified at the time, but Rainey says not a word about this. Another circumstance relied on by defendants is that Male was anxious to sell his land, indeed it appears there was necessity therefor, in order that he might pay off the deed of trust to Kittle in favor of Crim. Male admits that he inquired of Rainey several times whether they had his money for his land, but says Rainey made him no answer whether they would ever take it or not. Plaintiffs claim these inquiries amounted to an admission by Male that their contract was still in force. But defendants answer, and with force, that if Male knew he had a binding contract with plaintiffs, he would have been advised to do what the record shows others did do, sue plaintiffs for specific execution. Before contracting or selling his land to George, Male says he gave a ten days option to W. F. McGee, and that he neither told McGee nor George at the time of making the contracts with them that he had previously optioned the land to plaintiffs, for the reason that their option had been out so long that he did not think it worth while.

On this state of the evidence counsel for plaintiffs inquire whether the evidence of an ignorant and illiterate witness like Male, who can neither read nor write, will be allowed to outweigh the testimony of intelligent witnesses like Rainey and Wilkinson as to the fact of notice? So far as the evidence of

Wilkinson is concerned it has little evidential force on the fact of service.   He was not present, did not see the notice served, and of course his testimony as to the fact of service is necessarily hearsay and incompetent.   This leaves Rainey and Male in direct conflict as to the fact of service.   While Male admits his illiteracy, his evidence shows him far from ignorant; he appears to have more than ordinary intelligence for a man of his years and opportunities.   With Male this was his most important business transaction; it involved all, or practically all the property he owned; he had a pressing obligation existing against the land, requiring a sale thereof, while Rainey was engaged in many other and various transactions requiring his thought and attention.   A rule of evidence applicable in such cases is, that the supreme importance of a transaction to one of the persons engaged therein will make his testimony of greater weight, because his memory is more trustworthy than that of an adverse party to whom the transaction was of far less importance. 17 Cyc. 782, citing in note 18, among other cases, *Platt* v. *Stewart,* 19 Fed. Cases, No. 11,220; 13 Blatchf. 481.   There is no documentary evidence controlling this material question of fact. The copy of the alleged notice, is a document with which Male denies all connection, and the letter of October 23, 1902, has little bearing on the question, nothing indeed inconsistent with defendant's denial of notice.   The fact of notice practically stands on conflicting oral evidence.   In such cases the rule so often announced here, and lastly perhaps in *Bank* v. *Thompson,* 63 W. Va. 196, is applicable, namely:   that, "where a chancery cause turns on the effect and weight of evidence and credit of witnesses, and that evidence is such that reasonable men may differ as to its effect, the appellate court cannot reverse the circuit court's decree."   While the decree below does not in terms find the fact of notice against plaintiffs, yet as plaintiffs case practically depends on this important question of fact we must dispose of the case on the assumption that the court below did so find.

Our conclusions, therefore, are that the decree below was right and to affirm it.

*Affirmed.*